## WIEGAND v. COPELAND.

*(Circuit Court, D. California.   February 6, 1882.)*

1. APPEAL.—FINAL DECREE—DISSOLUTION OF PARTNERSHIP.

   Whether a decree in a suit for a dissolution of partnership which determines the rights of the parties, and directs that the property be sold, and that certain sums be paid out to the various parties for costs, fees, and expenses, and that the remainder be divided *pro rata*, according to their respective interests, between the parties, but without providing for the debts of the partnership, is a final decree, *quære.*

2. PARTNERSHIP PROPERTY.

   Real estate put into the partnership by one of the parties at an agreed valuation becomes partnership property without a conveyance from the owner, and such owner holds the legal title in trust for the partnership as assets of the partnership estate.

3. SAME—DIVISION ON DISSOLUTION.

   Where real estate held by a partnership cannot be divided between the partners, or it is required to pay the partnership debts, the court, upon a decree of dissolution, may order the sale thereof, and the proceeds to be appropriated to the partnership debts, and the surplus to be divided between the partners.

4. ERRORS NOT REVIEWABLE.

   Errors in orders and proceedings subsequent to rendition of the decree, from which no appeal can be taken, cannot be considered.

5. COSTS IN EQUITY.

   In an equity suit costs are in the sound discretion of the court.

Appeal from the Consular Court of Yokohama.

*E. D. Sawyer,* for appellant.

*George A. Nourse,* for respondent.

SAWYER, C. J.   From the record in this case it appears that prior to the fifteenth day of June, 1876, the plaintiff and the defendant were each engaged in business at Yokohama, in Japan, as brewers; and that on that day they entered into a copartnership to carry on the business of brewing.   The defendant seems to have been the owner of a larger establishment than the plaintiff.   It was agreed that the value of the defendant's land, brewery, and what is called his plant (by which, I suppose, is meant the implements and fixtures

used in carrying on the business of brewing, etc.) should be estimated and put into the business at $30,000. They were to be equal partners; and Wiegand, being unable to contribute his share of that amount, became indebted to Copeland in the sum of $15,000, being one-half the value of the property. Soon afterwards, or at about the same time, Wiegand contributed to the copartnership his plant and stock, valued at $2,421.64. This the consul general holds—and I think properly, under the testimony—was an additional amount of capital. Copeland took one-half the stock and plant of Wiegand, and gave him credit for the amount—$1,210.82—upon his indebtedness of $15,000 for one-half of the capital, which left him still indebted to the amount of $13,789.18.

Copeland did not transfer to Wiegand the legal title to one-half of the real estate of the copartnership; but, upon the formation of the copartnership, books were opened and the property entered at $30,000 as capital, and each of the parties was credited with one-half of the amount—$30,000—at which the real estate, plant, etc., had been agreed to be appraised.

The copartnership business was carried on for three years and a half, and the complainant then filed a bill for a dissolution of the partnership, alleging fraudulent acts and other irregularities on the part of Copeland. The case was tried before Consul General Van Buren, who found that Copeland had not been guilty of the acts charged, and he would have dismissed the bill, but, as the action had been instituted, it was agreed by the parties that a decree of dissolution of the copartnership should be entered, and the business of the firm wound up. A decree dissolving the copartnership was therefore entered, and the matter referred to an accountant to prepare a statement of the property and accounts of the firm. In his report the accountant finds that the net profits of the copartnership business have amounted to $19,450; that under an arrangement that each partner was to draw $150 a month, Copeland has drawn out a little more than that amount, and Wiegand something less; and that, upon striking a general balance, $26,287 of the estimated value of the firm assets is found to be the share of Copeland, and $6,250 that of Wiegand. Thereupon the court entered a decree adjudging these amounts to be the proportions belonging to the parties, respectively, and ordering that the partnership property, including the real estate, plant, etc., be sold at public auction, and the proceeds, after deducting certain sums for expenses, costs, and fees, divided *pro rata* between the parties.

Subsequently, further proceedings were had in the case, upon which additional provisions were made relative to the manner in which the property should be sold; and all the property of the partnership was, thereupon, sold, in pursuance of the decree and the further direction of the court. Upon the sale it proved that there were no bidders except Copeland; Wiegand being unable to purchase, and the property being apparently situated in a country where no other persons than the plaintiff and defendant were desirous of engaging in the brewing business. The property was bid in by and sold to the defendant, Copeland, for $12,000,—an amount very much less than the value at which it had been estimated in the report of the accountant and in the decree of the court, where the value of the assets of the firm was set down at $32,537. As a result, Wiegand not only had nothing coming to him, but he was brought in debt to the amount of several thousand dollars. A further decree was thereupon entered that he pay to Copeland the amount of such indebtedness, and this appeal has, consequently, been taken.

The first question raised by the appellee is that the appeal is not from a final decree. The decree of December 6, 1879, from which the appeal is in terms taken, being the first decree, determines the rights of the parties, and directs that the property be sold, and that certain sums be paid out to the various parties for costs, fees, and expenses, and the remainder divided *pro rata*, according to their respective interests, between the complainant and the defendant. It is insisted that this is not, under the law, a final decree, and that, therefore, an appeal from it does not lie.

It is not entirely clear to my mind whether or not this is a final decree, within the meaning of the law. It determined certain rights of the parties, and fixed the proportionate amounts due to each upon the assumed valuation of the property of the copartnership. It provided for the payment of certain sums of money to various parties, but without ascertaining the amounts, and the partnership debts. The debts of the firm had not been ascertained by the decree, and the amounts to be paid as costs were not determined. There were subsequently further proceedings, and further provisions made having the effect of additional provisions to the decree, by which the mode of sale of the property was prescribed; and still later, after the affairs of the copartnership were settled, the debts, expenses, fees, and costs ascertained, and paid out of the proceeds of the sale, there was entered another further, separate, and final decree, directing that Wiegand pay to Copeland a certain amount, being the balance finally found

due him. It is therefore a matter of some doubt whether or not the decree appealed from is properly a final and appealable decree. But the conclusion to which I have come on the merits of the case makes it unnecessary to definitely determine that question, as the result as to this appeal would in any event be the same.

Assuming, then, for the purpose of this case, the appeal to have been properly taken, the first point made by Wiegand is that the property referred to ought not to have been regarded as partnership property, because the legal title to one-half of it had not been absolutely conveyed to him by Copeland. Under the terms of the copartnership agreement it was manifestly partnership property, its value being therein fixed at $30,000; and, upon the commencement of the business of the firm, one-half of that amount was charged to each party upon the firm books, and no question as to its not being partnership property was raised during the three and a half years in which the business was being amicably conducted. Besides, Copeland gave Wiegand an acknowledgment in writing that one-half of that property was held in trust for him, and a mortgage was given by Wiegand upon his half of the partnership property to secure to Copeland the payment of the $15,000 due him on account of his half interest in this property. Wiegand claimed one-half of the profits of the copartnership business, and if he was entitled to a full share of the profits, he was, certainly, liable for an equal share of the losses from depreciation in value of the firm assets, or otherwise. I do not understand that at the time the decree appealed from was entered, directing that the property be sold, any objection was made upon the part of Wiegand that the shares of the respective parties were not properly ascertained. In the nature of the case it was a species of property which could not be divided; and, in order that it should be distributed to the parties in the proportions to which they were entitled, it was necessary that it should be converted into money. Under the circumstances, the proper and only mode of settling the affairs of the copartnership was a sale and division of the proceeds. I think, therefore, that the court is not in error in holding this to be partnership property, and ordering that it be sold. If the legal title was in Copeland, he still held it in trust for the firm as partnership property.

If, upon the sale, the property had brought the amount at which its value had been estimated, it is highly probable that no question would have been raised as to the correctness of the decree, or the action of the court in this particular. Each of the parties would have

received the amount to which he was entitled, and Wiegand would have been content with the sum that he had claimed and received. If any hardship has resulted to Wiegand from the result of the sale, it has accrued from proceedings subsequent to the decree from which the appeal is taken, not a necessary result from the matters decreed, and it is not open to consideration on this appeal. If the property had brought upon the sale a larger amount than its estimated value, there would have been quite a large sum coming to Wiegand; or, even if it had been sold for its estimated value, the result would undoubtedly have been entirely satisfactory to him. The difficulty, then, does not arise from the decree, but from the failure to realize from the property the value which had been put upon it. If there was a depreciation in the value of the property, Wiegand must bear his share of the resulting loss. If there was any fraud or error in the subsequent proceedings, including the direction of the mode of sale, it is not open to review now, because there is no appeal from the subsequent final decree.

Another objection of Wiegand is in reference to the costs; it is contended that he should not be required to pay certain costs. In an equity suit of this character, the costs are in the sound discretion of the court, and its decision in that regard is not subject to review. Even if that were not so, I do not think the court unduly exercised its discretion in its decision as to the costs.

The fact is, as found by the consul general, that Wiegand had no valid ground of complaint. If he had gone on with the business, and had not applied for a dissolution of the copartnership, the probability is that he would have received his share of the profits, paid his indebtedness to his partner, and been placed upon an equal footing with him in a prosperous business. But, unfortunately for him, he sought a dissolution; and Copeland, after at first successfully resisting his application on the grounds alleged, finally consented to it. The court then by its decree directed that the property be sold and the proceeds divided. It was unfortunate for Wiegand that, upon the sale, he was unable himself to bid upon the property, and that at that time and place there was no competition; but any hardship or wrong, if any there is, growing out of these circumstances, was subsequent to the decree from which this appeal is taken, and is not open for discussion on this appeal.

I think the decree appealed from is correct, and it must be affirmed; and it is so ordered.